**EXHIBIT 6**

Dated: 20 November 2020

IMPERIAL VISION FUND SPC
(acting for and on behalf of the Segregated Portfolio referenced herein)

AND

LEO ASSET MANAGEMENT LIMITED

---

# INVESTMENT MANAGEMENT AGREEMENT

---

FrancisGrey
Suite 2206, Cassia Court
72 Market Street
Camana Bay
P.O. Box 32302
Grand Cayman KY1-1209

# INVESTMENT MANAGEMENT AGREEMENT

**THIS AGREEMENT** is made the 20 day of November 2020.

**PARTIES:**

(1) **IMPERIAL VISION FUND SPC,** a company incorporated in the Cayman Islands on 4 November 2020 and registered as an exempted company with limited liability and registered as a segregated portfolio company with its registered office c/o FG Services Limited, Suite 2206, Cassia Court, 72 Market Street, Camana Bay, P.O. Box 30869, Grand Cayman KY1-1204, Cayman Islands (the "**Fund**"); and

(2) **LEO ASSET MANAGEMENT LIMITED**, an exempted limited company incorporated in Hong Kong on 3 January 2018 and having its registered office address at 22F, China Overseas Building, 139 Hennessy Road, Wan Chai, Hong Kong (the "**Investment Manager**").

**WHEREAS:**

(A) The Fund is an exempted segregated portfolio company incorporated under the provisions of the Companies Law (2020 Revision) of the Cayman Islands.

(B) The Fund will carry on the business of an open-ended investment fund and is or will be registered as a mutual fund pursuant to section 4(3) of the Mutual Funds Law (2020 Revision) of the Cayman Islands.

(C) The Fund will offer its Participating Shares to investors on the terms set out in its Confidential Offering Memorandum and the Supplements issued in respect of each segregated portfolio created by the Fund.

(D) The Fund has the power to create and maintain one or more segregated portfolios to segregate the assets and liabilities related to a particular segregated portfolio from the assets and liabilities relating to any other segregated portfolios of the Fund and from the Fund's general assets (the "**General Assets**") and liabilities and to issue a class (or several different classes) of Participating Shares in respect of each such segregated portfolio.

(E) In exercise of such power, the Fund has as at the date hereof created the segregated portfolio set out in Schedule 1 (the "**Segregated Portfolio**") and issued two Classes of Participating Shares in respect of the Segregated Portfolio being Class A and Class B.

(F) The Investment Manager is a registered licensee with the SFC pursuant to the Securities and Futures Ordinance of Hong Kong, holding a license covering "Advising on Securities" and "Asset Management";

(G) The Fund wishes to engage the Investment Manager to perform the Services (as defined herein) for the Segregated Portfolio and the Investment Manager has agreed to perform the Services, on the terms and conditions set out in this Agreement.

**NOW THEREFORE,** in consideration of the mutual covenants the parties hereby agree as follows:

1. **Interpretation**

1.1 Unless the context otherwise requires the following expressions shall have the meanings set out beside them:-

| | |
|---|---|
| **"Administrator"** | the administrator of the Fund from time to time, currently Ayasa Globo Financial Services Limited; |
| **"Agreement"** | means this investment management agreement and any schedules or exhibits to it and any document executed by the parties which is expressed to be supplemental to it; |
| **"Assets"** | the assets of the Segregated Portfolio from time to time which are placed under the Investment Manager's management; |
| **"Business Day"** | a day (other than a Saturday or Sunday) on which commercial banks are open for usual business in the Cayman Islands and in Hong Kong or any other additional or alternative day that may be designated by the Directors from time to time as a Business Day; |
| **"Directors"** | the directors of the Fund from time to time; |
| **"Investment Objective"** | the investment objective and strategy of the Segregated Portfolio as set out in the Offering Memorandum; |
| **"High Water Mark"** | means, with respect to each Series of Segregated Portfolio Shares issued, the Net Asset Value per Participating Share of the relevant Series as of the end of the most recent calendar year for which a Performance Fee was paid or payable to the Investment Manager, or if no Performance Fee has been paid since the Subscription Date, then the initial Net Asset Value of such Series of the relevant Participating Shares. |
| **Management Fee:** | The management fee payable to the Investment Manager pursuant to this Agreement. |
| **"Memorandum and Articles of Association"** | the memorandum and articles of association of the Fund as may be revised from time to time; |
| **"Net New Appreciation"** | the difference, if any, between: (i) the Net Asset Value of the relevant Series of Segregated Portfolio Shares referable to the Segregated Portfolio as of the Valuation Date at the end of each calendar year, the date of termination of the Investment Management Agreement, the date of the dissolution of the Segregated Portfolio or, with respect to such Segregated Portfolio Shares redeemed during the calendar year, their Redemption Date, as applicable, (without reduction for any Performance Fees accrued, paid or payable to the Investment Manager for the relevant period or dividends declared or paid as of the end of the relevant calendar year); minus (ii) the Net Asset Value per Participating Share of such Series as of the Valuation Date at the end of the most recent calendar year for which a Performance Fee was paid or payable to the Investment Manager, with such amount reduced by the amount of the Performance Fee paid or payable for such prior calendar year and also reduced by any dividends declared and/or paid as of or subsequent to the end of such prior calendar year through to the first day of the |

calendar year referred to in paragraph (i) above and increased by the amount of all additional relevant Segregated Portfolio purchases since the end of the most recent calendar year for which a Performance Fee was paid. For the purposes of calculating the first Performance Fee payable to the Investment Manager, paragraph (ii) shall mean the initial Net Asset Value of the applicable Series of the Segregated Portfolio Shares;

| | |
|---|---|
| **"Offering Memorandum"** | the confidential offering memorandum of the Fund as may be revised from time to time and the Supplements thereto; |
| **"Participating Shares"** | the non-voting, redeemable, participating shares of such class as is specified in the Offering Memorandum having a par value of US$0.01 each; |
| **"Performance Fee"** | the performance fee payable to the Investment Manager pursuant to this Agreement; |
| **"Services"** | the services to be provided by the Investment Manager to the Segregated Portfolio under this Agreement as set out in Clauses 4.1 and 4.2; |
| **"SFC"** | the Securities and Futures Commission of Hong Kong; |
| **"Shareholder"** | a registered owner of Participating Shares, as set out in the register of members of the Fund; and |
| **"Valuation Day"** | the Business Day upon which the Net Asset Value is calculated, being such day or days as specified in the relevant Supplement and such other day or days as the Directors may from time to time determine either generally or in any particular case. |

1.2 Capitalized terms in the Agreement have the same meaning as are ascribed to these terms in the Offering Memorandum unless specifically defined herein.

1.3 References herein to "**Clauses**" are to clauses of this Agreement and headings are inserted for convenience only and shall not be used in construing this Agreement.

1.4 References herein to the "Fund" shall, where the context requires, be construed as a reference to the Fund for the account of each segregated portfolio or the relevant Class(es).

1.5 References in this Agreement to the "Segregated Portfolio" shall be construed as a reference to the segregated portfolio listed in Schedule 1 and to any additional segregated portfolio established by the Fund from time to time and which the Investment Manager and the Fund for the account of such additional segregated portfolios agree in writing will be bound by this Agreement and/or, where the context requires, the Fund for the account of the Segregated Portfolio (and to any additional segregated portfolio established by the Fund from time to time and which the Investment Manager and the Fund for the account of such segregated portfolio agree in writing will be bound by this Agreement).

## 2. Undertaking

The Fund confirms that it has the authority to delegate the management and the investment of the Assets and that the Assets are free from any lien, charge or other encumbrance and that it

will not by any act or omission permit any such encumbrance to arise without prior notice in writing to the Investment Manager.

3. **Appointment of Investment Manager**

The Fund hereby appoints the Investment Manager to manage and invest the Assets (subject to the overall supervision of the Directors) in accordance with the terms hereof and with the Investment Objective, policies, guidelines and restrictions that from time to time are set out in the Offering Memorandum and the Memorandum and Articles of Association with effect from the date hereof until its appointment shall be terminated as hereinafter provided and the Investment Manager hereby accepts such appointment and agrees to assume the obligations set forth herein.

4. **Management of Assets and Investments**

4.1 On and subject to the terms of this Agreement and, in particular but without limitation to, the provisions of Clause 5, the Investment Manager shall manage the Assets and the investment of the Assets in accordance with the terms hereof and with the Investment Objective, policies, guidelines and restrictions that from time to time are set out in the Offering Memorandum and the Memorandum and Articles of Association as agent for and for the account of the Fund (acting for the account and on behalf of the Segregated Portfolio) at the discretion of the Investment Manager, but subject to any directions given by the Directors, with power and authority to do all such things individually or together as may be necessary at the discretion of the Investment Manager, subject to any directions given by the Directors, to pursue the investment objective.

4.2 Without prejudice to the generality of the foregoing, the Investment Manager shall:-

4.2.1 manage in its discretion, but subject to any directions given by the Directors, the acquisition and conduct of all Assets in accordance with the Offering Memorandum;

4.2.2 keep under regular review the progress of all Assets, investments and other assets of the Segregated Portfolio;

4.2.3 determine, and pay on behalf of the Segregated Portfolio, the fees, expenses and other costs of the Segregated Portfolio;

4.2.4 keep or cause to be kept such books, records and statements as shall be necessary to give a complete record of all transactions which the Investment Manager carries out for the account of the Segregated Portfolio (the "**Records**") and shall retain or arrange for the retention of, for a period of at least five (5) years from the date of creation, or on termination of this Agreement as soon as practicable shall return to the Fund, the Records together with complete copies of all documents generated or received by the Investment Manager in the ordinary course of business pertaining to the Segregated Portfolio or to the compensation payable to the Investment Manager, which, during the term of this Agreement or thereafter if such Records and documents are retained by the Investment Manager, the Fund and persons authorised in writing by either of them shall be entitled to inspect at all reasonable times (subject to the giving of five (5) Business Days' notice in advance);

4.2.5 open, maintain and close, in the name of the Fund acting for and on behalf of the Segregated Portfolio, accounts of any kind (including custodian accounts and bank accounts) and, in connection therewith: (i) buy and sell shares, and (ii) execute such assignments, instruments of transfer, orders and other instruments and to enter into such agreements as may be necessary or proper in connection with the performance of the Investment Manager's duties hereunder;

4.2.6 negotiate and enter into all manner of contracts and instruments in connection with the foregoing;

4.2.7 engage the services (including through the service agreement by and between the Fund and the Administrator) of such agents, consultants, advisors, employees and other service providers as the Investment Manager deems necessary or advisable and cause the Fund actin for and on behalf of the Segregated Portfolio, to pay such compensation, including performance-based and incentive compensation, to the foregoing as the Directors may determine;

4.2.8 establish reserves for unknown or contingent debts, liabilities or obligations, and advise and consult with the Directors regarding the same;

4.2.9 consult with the Directors on matters relating to (i) the postponement and/or suspension of (a) Redemption Day, (b) the calculation of the Fund's Net Asset Value and (c) the payment of redemption proceeds; (ii) the payment of dividends; (iii) the effectuation of mandatory redemptions; and (iv) the calculation of Net asset value;

4.2.10 prepare material and provide when reasonably requested to do so by the Fund such information concerning the activities undertaken for inclusion in the following reports that the Fund and/or its advisers are required to prepare pursuant to the Offering Memorandum:

(i) periodic reports on the investment performance of the Segregated Portfolio; and

(ii) the annual audited financial statements of the Fund;

and provide when reasonably requested to do so by the Fund such information concerning the activities undertaken for inclusion in such other reports and accounts of the Fund, as the Fund and/or its advisers may prepare for the Fund, its Directors and/or its participating shareholders;

4.2.11 at the request of the Directors and subject to (i) reasonable prior notice and (ii) the costs incurred by the Investment Manager (other than time costs) in complying with such request being for the account of the Fund, the Investment Manager shall endeavour in good faith to cause the Investment Manager to attend, either in person or by telephone any meeting of the Directors from time to time, to report on the Investment Manager's activities and on other matters pertaining to the Investment Manager's engagement, provided that any travel expenses shall be pre-approved by the Directors; and

4.2.12 negotiate and implement at its discretion such borrowing arrangements, subject to the authorisation of the Directors, as the Investment Manager shall consider necessary in pursuit of the Investment Objective.

5. **Further Obligations of the Investment Manager**

5.1 In carrying out its obligations under Clause 4 above the Investment Manager shall observe and comply with:-

5.1.1 the Memorandum and Articles of Association;

5.1.2 the Investment Objective, restrictions or policy statements for the time being contained in the Offering Memorandum;

5.1.3 the laws of the Cayman Islands, including but not limited to the Companies Law (2020 Revision), the Mutual Funds Law (2020 Revision) and the Proceeds of Crime Law (2020 Revision) as each may be amended or restated from time to time; and

5.1.4 any other matter to which a prudent adviser to an asset and investment portfolio should reasonably pay regard in the proper discharge of its duties.

5.2 All activities engaged in by the Investment Manager hereunder shall at all times be subject to the control of and review by the Directors and any specific or general direction given by the Directors shall override the general authorisations given to the Investment Manager hereunder.

6. **Delegation of Duties**

With the prior written consent of the Directors and subject to the following proviso, the Investment Manager may delegate its functions, powers, discretions, privileges and duties herein or any of them (the "**Delegated Functions**") to one or more suitably qualified and skilled investment advisor (the "**Investment Advisor**") to perform the Delegated Functions on the Investment Manager's behalf. Subject to compliance with the foregoing, following the appointment of the Investment Advisor, the Investment Manager shall continue to be paid the Management Fee and Performance Fee under this Agreement and the Investment Manager shall be responsible for the remuneration of the Investment Advisor.

7. **Obligations of the Fund**

The Fund will supply or procure to the Investment Manager copies of the Memorandum and Articles of Association of the Fund, the Offering Memorandum and all such other information as the Investment Manager shall reasonably require to enable it to perform its duties hereunder. The Fund warrants that to the best of its knowledge all information provided by the Fund to the Investment Manager is or will be true and accurate in all material respects and that the Fund will provide, to the extent that the same is in its possession and/or control, such further information as it may legally be required to provide by any competent authority. The Fund will notify the Investment Manager promptly if there is any material change in any such information provided.

8. **Fees**

8.1 The Fund will pay to the Investment Manager by way of remuneration for the Services, the Management Fee and the Performance Fee particulars of which are set out in Schedule 2.

8.2 The Investment Manager, in its discretion, may waive, reduce or rebate all or a portion of the Management Fee or the Performance Fee in respect of certain Shareholders (including without limitation in respect of the Investment Manager, and any affiliates or employees of the Investment Manager).

8.3 The Management Fee, the Performance Fee and all other payments to be made to the Investment Manager under this Agreement will be paid by the Fund (acting for the account and on behalf of the Segregated Portfolio) to the Investment Manager by transfer to such bank account as may be notified by the Investment Manager from time to time provided that the payment in full to such account shall constitute a valid discharge of the Fund's obligations to the Investment Manager and any investment advisor that may be appointed and the Fund shall not be concerned with the distribution or allocation of any such amounts between the Investment Manager and any investment advisor thereafter.

9. **Costs and Expenses**

9.1 The Investment Manager shall pay all of its own operating and overhead costs and expenses without reimbursement by the Fund. The Fund will not have its own separate employees or office and it will not reimburse the Investment Manager for salaries, office rent or other general overhead costs of the Investment Manager.

9.2 The Fund shall pay all its own expenses incurred (acting for the account and on behalf of the Segregated Portfolio) in connection with investing the Assets, including without limitation, the costs incurred in acquiring and managing the Assets.

9.3 The Fund shall reimburse the Investment Manager for the expenses of the Fund and all out of pocket expenses of the Investment Manager (including without limitation travel expenses which shall be pre-approved by the Directors), wholly, properly and necessarily incurred by the Investment Manager in the performance of its duties under this Agreement, subject to production of receipts or other appropriate evidence of payment.

**10. Indemnification and Limitation of Liability**

10.1 The Investment Manager hereby agrees with the Fund to use its best efforts and judgement and due care in performing its duties and obligations hereunder and agrees to indemnify the Fund against all liabilities whatsoever incurred by the Fund for and on behalf of any Segregated Portfolio by reason of any fraud or wilful misconduct, on the part of the Investment Manager including but not limited to all legal costs (on a full indemnity basis) and other expenses incurred in connection therewith other than liabilities resulting from the Investment Manager's implementation of any express directions of the Directors.

10.2 The Fund shall indemnify the Investment Manager out of the assets held for and on behalf of the relevant Segregated Portfolio from all liabilities whatsoever which the Investment Manager may incur in performing its obligations under this Agreement, other than those liabilities resulting from a material default in performance of any of the Investment Manager's duties under this Agreement or fraud or wilful misconduct on the part of the Investment Manager.

**11. Survival following Termination**

The indemnities set forth in clause 10 of this Agreement shall survive the termination of this Agreement.

**12. Representations and Warranties**

12.1 The Fund hereby represents and warrants to the Investment Manager that:

12.1.1 the Offering Memorandum, excluding all references therein to the Investment Manager and the investment strategy, is and shall be accurate in all material respects and does not contain an untrue statement of a material fact or omit to state a material fact required to be stated therein or necessary to make the statements therein not misleading;

12.1.2 the Fund has full capacity, power and authority to enter into this Agreement (acting for the account and on behalf of the Segregated Portfolio), and it has taken all necessary corporate or other requisite action and has obtained all necessary authorisations and consents, to authorise the execution of this Agreement and perform its duties and obligations hereunder in accordance with the terms of this Agreement, and that this Agreement will constitute its legal, valid and binding obligations enforceable against it in accordance with its terms;

12.1.3 the Fund has complied and will continue to comply with all laws, rules, and regulations having application to itself and any of its business and assets;

12.1.4 the Fund is neither engaged in, nor the subject of, any action, suit, litigation, arbitration, investigation, enforcement or administrative proceedings, nor has it received any notice of any such action, suit, litigation, arbitration, investigation, enforcement or administrative proceedings pending or threatened against it or any of its directors or officers by any person or authority; and

12.1. 5 the Fund is not, and shall not as a result of entering into this Agreement be, in breach or default under any undertaking, agreement, contract, statute, rule or regulation to which it, or any of its directors or officers is a party or by which it or they are/is bound and which materially and adversely affects, or is likely to materially and adversely affect, its business or financial condition or ability to perform its duties under this Agreement.

The foregoing representations and warranties shall be continuing during the term of this Agreement and, if at any time any of the foregoing representations or warranties becomes untrue or inaccurate, the Fund shall promptly notify the Investment Manager in writing of that fact.

12.2 The Investment Manager hereby represents and warrants to the Fund that:

12.2.1 on the date hereof it is and during the term of this Agreement, it will be a company duly organised validly existing and in good standing under the laws of the jurisdiction of incorporation;

12.2.2 this Agreement has been duly and validly authorised executed and delivered on behalf of the Investment Manager and constitutes a valid, binding and enforceable agreement of the Investment Manager in accordance with its terms;

12.2.3 it has full capacity, power and authority to enter into this Agreement and it has taken all necessary corporate or other requisite action and has obtained all necessary authorisations and consents, to authorise the execution of this Agreement and perform its duties and obligations hereunder in accordance with the terms of this Agreement, and that this Agreement will constitute the legal, valid and binding obligations enforceable against it in accordance with its terms;

12.2.4 all references and information in the Offering Memorandum relating to it and to the investment strategy are and shall be accurate in all material respects, and do not contain an untrue statement of a material fact or omit to state a material fact required to be stated therein or necessary to make the statements therein not misleading;

12.2.5 it has complied and will continue to comply with all laws, rules, and regulations having application to himself and any of its business and assets;

12.2.6 it is neither engaged in, nor the subject of, any action, suit, litigation, arbitration, investigation, enforcement or administrative proceedings, nor has it received any notice of any such action, suit, litigation, arbitration, investigation, enforcement or administrative proceedings pending or threatened against it by any person or authority, which materially and adversely affects, or is likely to materially and adversely affect, its ability to perform its duties under this Agreement; and

12.2.7 it is not, and shall not as a result of entering into this Agreement be, in breach or default under any undertaking, agreement, contract, statute, rule or regulation to which it is a party or by which it is bound and which materially and adversely affects, or is likely to materially and adversely affect, its ability to perform its duties under this Agreement.

The foregoing representations and warranties shall be continuing during the term of this Agreement, and if, at any time any of the foregoing representations or warranties become untrue or inaccurate, the Investment Manager shall promptly notify the Fund in writing of that fact.

## 13. Termination

13.1 This Agreement shall continue and remain in force unless and until terminated by the Fund or the Investment Manager giving not less than thirty (30) days written notice to the other party or parties (as the case may be).

13.2 The Fund may not terminate the appointment of the Investment Manager otherwise than with unanimous approval of the holders of all the voting shares then outstanding in accordance with the terms of the Offering Memorandum.

13.3 This Agreement may be determined forthwith by notice in writing by the Fund or the Investment Manager (the "**Notifying Party**") to the other or others, if in the case of the Investment Manager, the Fund, or in the case of the Fund, the Investment Manager, shall:-

13.3.1 commit any material breach of its obligations under this Agreement and shall fail to make good such breach within thirty (30) days of receipt of written notice from the Notifying Party requiring it or them so to do; or

13. 3.2 in the case of the Fund, be dissolved (except a voluntary dissolution for the purposes of reconstruction or amalgamation upon terms previously approved in writing by the Notifying Party) or be unable to pay its debts or commit any act of bankruptcy or insolvency under the laws of the Cayman Islands (as the case may be) or if a receiver is appointed over any of its assets; or

13.3.3 in the case of the Investment Manager be declared bankrupt.

13.4 This Agreement will terminate automatically on:

13.4.1 the date on which the Investment Manager ceases to hold a licence granted by the SFC to carry on "Advising on Securities" (type 1) and "Asset Management" (type 9) regulated activity; or

13.4.2 the date on which the SFC suspends the Investment Manager's licence to carry on "Advising on Securities" (type 1) and "Asset Management" (type 9) regulated activity.

13.5 Any termination of the appointment of the Investment Manager under the provisions of this clause 13 shall be without prejudice to any antecedent liability of the Fund and of the Investment Manager. Without prejudice to any other rights they may have, the Investment Manager shall be entitled to receive all fees and other monies accrued and due up to the date of such termination.

13. 6 On termination of this Agreement, the Investment Manager shall return to the Fund or such person as the Fund shall nominate in writing from time to time, any property of the Fund in the possession or control of the Investment Manager including without limitation all Records and any original documents generated or received by the Investment Manager in the course of business pertaining to the Fund.

**14. Limited Recourse**

Notwithstanding any provision in this Agreement to the contrary, the rights of recourse of the Investment Manager against the Fund in respect of liabilities or obligations incurred for the account of any Segregated Portfolio shall be limited to the assets of the relevant Segregated Portfolio having satisfied or provided for all other prior ranking liabilities of the Fund for the account of such Segregated Portfolio. Accordingly, the Investment Manager shall have no claim or recourse against the Fund, for the account of the General Assets or any Segregated Portfolio, in respect of any amount which is or remains unsatisfied after the application of the funds comprised in the General Assets or the relevant Segregated Portfolio in accordance with this clause and any amount which is or remains unsatisfied after the application of the funds comprising such assets of the Fund or the relevant Segregated Portfolio and any remaining obligation to pay any further unsatisfied amounts shall be extinguished.

**15. Force Majeure**

15.1 Notwithstanding any other provision contained in this Agreement, no party shall be liable for any action taken, delay or any failure to take any action required to be taken hereunder or otherwise to fulfil its obligations hereunder (including without limitation the failure to receive or deliver securities or the failure to receive or make any payment) in the event and to the extent that the taking of such action, delay or such failure arises out of or is effectively caused by or directly or indirectly due to war, act of terrorism, insurrection, riot, labour disputes, civil commotion, act of God, accident, natural disaster, pandemic, quarantine, outbreak of disease or any other public health crisis, fire, water damage, loss of power, explosion, any law, decree, regulation or order of any government or governmental body (including any court or tribunal), or any other cause (whether similar or dissimilar to any of the foregoing) whatsoever beyond its reasonable control or the reasonable control of any delegate or securities system. The non-performing party shall use all reasonable efforts to minimize the effect of any force majeure. In any such event, the non-performing party shall be excused from any further performance and observance of the obligations so affected only for so long as such circumstances prevail and such party continues to use commercially reasonable efforts to recommence performance or observance as soon as practicable.

15.2 Either party may terminate this Agreement, by five (5) days' written notice to the other party, if any force majeure continues for a period in excess of thirty (30) consecutive days.

**16. Assignment**

The Agreement may not be assigned by the Fund without the prior written consent of the Investment Manager or by the Investment Manager without the prior written consent of the Fund.

**16. Non-Exclusivity**

16.1 The services of the Investment Manager hereunder are not exclusive and the Investment Manager shall devote only such time and resource to the business of the Fund as it shall determine in good faith is necessary for the proper performance of the services hereunder.

16.2 In particular and without prejudice to the generality of clause 16.1, the Investment Manager may conduct any other business, whether or not such business is in competition with the Fund and without limitation the Investment Manager may:

16.2.1 act as investment manager, investment advisor, sponsor, or manager, for any other person, account or collective investment vehicle;

16.2.2 manage funds or capital for other persons, accounts and collective investment vehicles;

16.2.3 have, make and maintain investments in its own name or through other entities;

16.2.4 serve as officers, directors, consultants, partners or stockholders of one or more investment funds, partnerships, securities firms or advisory firms; and

16.2.5 retain for its own use and benefit all fees or other money payable thereby.

16.3 In addition, the Investment Manager shall not be limited in any way in its carrying out of any other activities, and in particular but without limitation, the Investment Manager:

16.3.1 may give advice, and take action, with respect to any other person, account or collective investment vehicle that may differ from the advice given, or the timing or nature of action taken, with respect to the Fund;

16.3.2 may engage in transactions or investments or cause or advise any other person, to engage in transactions or investments that may differ from or be identical to the transactions or investments engaged in by the Investment Manager for the Fund;

16.3.3 shall not have any obligation to engage in any transaction or investment for the Fund's account that the Investment Manager may engage in for its own account or the account of any other person, except as otherwise required by applicable law; and

16.3.4 shall not be deemed to be affected with notice of or to be under any duty to disclose to the Fund any fact or thing which comes to its notice in the course of rendering services to any other person, client, account or collective investment vehicle or in the course of its business in any other capacity or in any manner whatsoever otherwise than in the course of carrying out its duties hereunder.

17. **Confidentiality**

17.1 None of the parties hereto shall, unless compelled to do so by any court of competent jurisdiction, either before or after the termination of this Agreement, disclose to any person not authorised by the relevant party to receive the same any confidential information relating to another party or to the affairs of such party of which the party disclosing the same shall have become possessed during the period of this Agreement and each party shall use its best endeavours to prevent any such disclosure as aforesaid.

17.2 None of the parties hereto shall do or commit any act, matter or thing which could or might prejudice or bring into disrepute in any manner the business or reputation of any other party or any director of any such party.

18. **Status**

For all purposes of this Agreement, the Investment Manager shall be an independent contractor and nothing in this Agreement shall be construed as making the Investment Manager dependent agents, partners or co-venturers of or with the Fund and except as provided in this Agreement, the Investment Manager shall not have the authority to bind, obligate or represent the Fund.

19. **Notices**

19.1 Any notice given hereunder shall be in writing and delivered by registered mail or international courier to the addresses of the Fund and of the Investment Manager appearing in this Agreement (or such other address as may be notified by the relevant party to the other in writing), with an electronic copy being sent by email:

19.1.1 in the case of the Fund, to the registered office of the Fund (for the time being FG Services Limited, Suite 2206, Cassia Court, 72 Market Street, Camana Bay, P.O. Box 30869, Grand Cayman KY1-1204, Cayman Islands) with a copy marked "**IMPERIAL VISION**" to the Administrator (for the time being at investorservices@ayasaglobo.com; and

19.1.2 in the case of the Investment Manager, to its address : 22F, China Overseas Building, 139 Hennessy Road, Wan Chai, Hong Kong, marked "Investment Manager" and at leo@romagroup.com (or such other email address or addresses as may be notified by the relevant party to the other in writing).

19.2 Notices shall be deemed to have been given on actual delivery to the stated address by registered mail or international courier.

20. **Amendments**

No provision of this Agreement may be waived or modified other than by way of a notice in writing signed by the party to be charged with such waiver or modification.

21. **Entire Agreement**

This Agreement contains the entire agreement between the parties in respect of the investment manager services to be provided by the Investment Manager to the Fund, and supersedes any prior agreement in whatever form and the parties hereto have not entered into this Agreement on the basis of any representations that are not expressly set out in this Agreement.

22. **Waiver**

No failure or delay by any party to exercise any right, power or remedy under this Agreement will constitute or operate as a waiver of it, nor will any partial exercise preclude any further exercise of the same, or of some other right, power or remedy.

23. **Severance**

If any provision of this Agreement is in whole or in part prohibited by law or judged by a court to be unlawful, void or unenforceable, the provision shall, to the extent required, be severed from this Agreement and rendered ineffective as far as possible without modifying the remaining provisions of this Agreement, and shall not in any way affect any other circumstances of or the validity or enforcement of this Agreement.

24. **Counterparts**

The Agreement may be executed in any number of counterparts, which taken together shall be deemed to constitute one and the same agreement and each of which individually shall be deemed to an original, with the same effect as if the signature on each counterpart were on the same original.

25. **Governing Law**

This Agreement shall be governed by and construed in accordance with the laws of the Cayman Islands. Disputes arising under, out of or in connection with this Agreement shall be subject to the non-exclusive jurisdiction of the courts of the Cayman Islands to which the parties hereby submit.

(Signatures on following page)

**IN WITNESS WHEREOF** this Agreement has been executed by the parties hereto in one or more counterparts on the above date.

**SIGNED by**
**IMPERIAL VISION FUND SPC acting for and on behalf of the Segregated Portfolio named in Schedule 1,**

By: ______________________

Name: Chow Justin Ting Fun

Title: Director

**SIGNED for and on behalf of**
**LEO ASSET MANAGEMENT LIMITED**

By: ______________________

Name: Yu Man Ting Loretta

Title: Director

**SCHEDULE 1**

1. Series 1 SP

## SCHEDULE 2

### A. MANAGEMENT AND PERFORMANCE FEES IN RESPECT OF SERIES 1 SP

**Class A Shares**

The Fund for the account of the Class A Shares of the Segregated Portfolio will pay to the Investment Manager a Management Fee, payable monthly in arrears, in an amount equal to 1/12th of 2% of the Net Asset Value of Class A Shares referable to the Segregated Portfolio (2% annually). For the purposes of calculating the Management Fee, the Net Asset Value is determined on the relevant Valuation Day before reduction for the Management Fee, or any Performance Fee accrued or payable as of such calendar month-end and before giving effect to any subscriptions, dividends or redemptions accrued or paid as of such calendar month- end. If a Shareholder redeems all or some of its Segregated Portfolio Shares in the Segregated Portfolio, if the Investment Management Agreement is terminated or if the Segregated Portfolio is dissolved as of any day other than the end of a calendar month, the Investment Manager will be paid a pro-rated Management Fee based upon the ratio that the number of days through the date of such event bears to the total number of days in the calendar month.

**Class B Shares**

The Fund for the account of the Class B Shares of the Segregated Portfolio will pay to the Investment Manager a Management Fee, payable monthly in arrears, in an amount equal to 1/12th of 2% of the Net Asset Value of Class B Shares referable to the Segregated Portfolio (2% annually). For the purposes of calculating the Management Fee, the Net Asset Value is determined on the relevant Valuation Day before reduction for the Management Fee, or any Performance Fee accrued or payable as of such calendar month-end and before giving effect to any subscriptions, dividends or redemptions accrued or paid as of such calendar month- end. If a Shareholder redeems all or some of its Segregated Portfolio Shares in the Segregated Portfolio, if the Investment Management Agreement is terminated or if the Segregated Portfolio is dissolved as of any day other than the end of a calendar month, the Investment Manager will be paid a pro-rated Management Fee based upon the ratio that the number of days through the date of such event bears to the total number of days in the calendar month.

**Investment Manager's Performance Fees**

The Fund for the account of the Segregated Portfolio shall pay the Investment Manager a Performance Fee equal to 10% of the Net New Appreciation, if any, achieved by each Series of Participating Shares referable to the Segregated Portfolio during each calendar year or, as the case may be, any part thereof with respect to Segregated Portfolio Shares redeemed during a calendar year. The Performance Fee shall be accrued monthly and paid annually in arrears within one month of the end of each calendar year or on redemption of Segregated Portfolio Shares during a calendar year.

If at any time the Net Asset Value of any Series of Participating Shares referable to the Segregated Portfolio is below the High Water Mark, no Performance Fee will be charged to such Series of the Segregated Portfolio until such Series of the Segregated Portfolio's Net Asset Value has reached or exceeded the High Water Mark as of a Performance Fee calculation date, being the last Valuation Day in a calendar year.

The accrued Performance Fee will be calculated and deducted as a liability in the calculation of the Net Asset Value of each Series of each Class referable to the Segregated Portfolio on each Valuation Day.

In the event that Participating Shares comprising a Series of the Segregated Portfolio are redeemed at a time when the Net Asset Value of such Series is below the High Water Mark, the High Water Mark shall be adjusted by a factor equal to:

1. the Net Asset Value of the relevant Series of the Segregated Portfolio after redemption; divided by

2. the Net Asset Value of the relevant Series of the Segregated Portfolio before redemption.

Once a Performance Fee is assessed, it is not refundable if the relevant Series of any Class of the Segregated Portfolio incurs losses thereafter.

If a Shareholder redeems all or some of its Participating Shares in the relevant Segregated Portfolio, if the Investment Management Agreement is terminated or if the Segregated Portfolio is dissolved as of any day other than the end of a calendar year, the Performance Fee shall be calculated and paid to the Investment Manager as if such date were the last day of the then current calendar year.